GILBERT *v.* CITY OF CLEVELAND ET AL.

[Cite as Gilbert v. Cleveland (1973),
37 Ohio Misc. 45.]

(No. 922033—Decided October 13, 1973.)

Common Pleas Court of Cuyahoga County.

*Mr. Morton L. Kaplan,* for plaintiff.
*Mr. Herbert R. Whiting,* director of law, and *Mr. Robert W. Jones,* for defendant City of Cleveland.
*Mr. John T. Corrigan,* Cuyahoga County prosecutor, and *Mr. John L. Dowling,* for defendant board of elections.
*Mr. William J. Brown,* Attorney General, and *Mr. James J. McGarry,* for defendants Ted Brown, Secretary of State, and William J. Brown, Attorney General of Ohio.

McMONAGLE, J.   This is an action filed by Gary D. Gilbert as a citizen of the United States, of the state of Ohio, and as an elector of the city of Cleveland.   The standing of the plaintiff to bring this action is not disputed.

The defendants are the city of Cleveland; Ted Brown,

Secretary of the State; The board of elections of Cuyahoga County; and William J. Brown, Attorney General.

Since this is an action involving the general election of the city of Cleveland, a municipal corporation, to be held on November 6, 1973, all parties cooperated to bring the matter to issue by filing answers to the Second Amended Complaint and are all properly before the court.

The city of Cleveland also filed a Cross-Claim against the defendant Cuyahoga County board of elections. Upon the board's refusal to join the issue presented in the Cross-Claim in less time than that specified in Civil Rule 12, the following entry was made by the court and an alternative writ of mandamus was issued pursuant to the entry.

"October 19, 1973

"Leave granted defendant city of Cleveland to file petition for writ of mandamus herein instanter in substitution of its cross-claim against the defendant board of elections; the alternative writ to be returnable at 2:00 P. M. on October 19, 1973."

The Answer of respondent Cuyahoga County board of elections was thereupon duly filed in response to the alternative writ stating its reasons why a peremptory writ of mandamus should not be issued.

The facts establish that pursuant to the applicable sections of Chapter 3 of the charter of the city of Cleveland, four candidates for the office of Mayor of the city of Cleveland, Mayor Ralph J. Perk, James M. Carney, Roberta Scherr, and Joseph Pirincin, filed nominating petitions with the board of elections at least forty days prior to the primary election. These candidates were thereby qualified for the non-partisan mayoral primary election, were placed in nomination and had their names printed on the primary ballots. Thereafter, on Tuesday, October 2, 1973, a non-partisan primary election was held for the purpose of nominating two candidates for the office of Mayor of the city of Cleveland. Section 10 of the charter of the city of Cleveland provides that the two candidates on the primary election ballot receiving the highest number of votes in the primary election shall be the two candidates whose names

shall appear on the general election ballot. Ralph J. Perk, Mayor of Cleveland, and James M. Carney received the highest number of votes and, accordingly, were designated as the only mayoral candidates in the November 6, 1973, general election.

On October 15, 1973, twenty-six days prior to the scheduled general election, James M. Carney announced the withdrawal of his candidacy and on October 15, 1973, the Cuyahoga County board of elections formally accepted Mr. Carney's decision to withdraw and directed that ballots be prepared showing the only mayoral candidate to be Mr. Perk. The votes received in the primary election by each candidate were as follows:

| | |
|---|---|
| Ralph J. Perk | 56,883 |
| James M. Carney | 44,878 |
| Roberta Scherr | 1,008 |
| Joseph Pirincin | 823 |

It is the claim of the plaintiff that he and all other electors of the city of Cleveland have either a legal, a constitutional, or an inherent right to have two persons listed as candidates for Mayor of the city of Cleveland on the ballot in the November 6, 1973, election. Concededly one must be Ralph J. Perk and plaintiff in his pleadings makes no contentions as to who the other person should be, stating that if neither the Cleveland city charter, nor the general law makes provision for the placing of a second name on the ballot, the court should fashion such orders as will provide two names to be submitted to the electorate.

The prayer of the plaintiff's Second Complaint reads as follows:

"Wherefore, plaintiff prays:

"(1) that the court determine the constitutionality of the municipal ordinances and state statutes in question.

"(2) that the court determine whether a substitute candidate's name should be placed on the ballot and by what means said candidate should be selected.

"(3) that the Secretary of State of the State of Ohio and the Board of Elections of Cuyahoga County be enjoined from holding the November 6, 1973, mayoral election until

such time as the issues presented herein are determined by the court."

It is the claim of the city of Cleveland, while disputing neither the right of James M. Carney to withdraw as a candidate nor the fact that he has duly withdrawn as such candidate, that the law does not permit the removal of Mr. Carney's name from the ballot for the November election and the board of elections may not validly cause such removal. It, in substance, requests such a finding by the court, coupled with an order requiring the name of James M. Carney to be listed on the November ballot.

The board of elections asserts that its action ordering the removal of the name of Mr. Carney from the ballot was within its discretionary powers; that substantially all proceedings required to effect such removal from the voting machines has been completed; that a restoration of Mr. Carney's name to the mayoralty ballot would serve only to disrupt the efforts of the board of elections to conduct an orderly election; that relator is guilty of laches in waiting four days to file the mandamus action; and that such restoration would deny Mr. Carney his right as a citizen under Section 1 of the 14th Amendment to the United States Constitution, in that it would deny him an equal protection of the law by failing to accord him the privilege accorded to other candidates of withdrawing from the ballot.

The questions to be decided by the court may be stated as follows:

(1) Does the board of elections, under the facts in this case, have the discretionary power to remove the name of Mr. Carney from the mayoral ballot of the November, 1973, election, and if it does have such power did its action in removing his name constitute a gross abuse of that discretion?

(2) In the event Mr. Carney's name may be validly removed from the ballot, is the board of elections obliged to list another person as a candidate and, if so, by what means should the name of such person be determined?

Practically all material facts have been stipulated. Those not stipulated have been determined by the court

and such determinations are reflected herein and in the judgment entry of the court..

Section 1, Article V of the Ohio Constitution provides that all citizens of the United States having such residential and age requirements as are provided by law shall have the qualifications of an elector and be entitled to vote at all elections.

The courts have held that if statutes or charters substantially prohibit the submission of candidates' names for a vote of the people they are manifestly so unreasonable, arbitrary, discretionary, restrictive, non-uniform in operation, and operate so unequally upon all members of a class that the restrictive or prohibitory sections are rendered null, void, invalid and unconstitutional.

One of the most important offices to be filled at the election of November 6, 1973, if not the most important, is the office of Mayor of the city of Cleveland. Every citizen of Cleveland certainly should have the opportunity of voting for the candidate of his choice, subject to reasonable regulations..

It is to be considered that the adopters of a municipal charter are analogous to a legislative body within the scope and exercise of their rights and functions.

15 Ohio Jurisprudence 309, Elections, Section 4, states:

"* * * With respect to the extent and limits of such regulatory power of the legislature, the well-settled rule is that while the legislature has no power, directly or indirectly, to deny or abridge the constitutional right of citizens to vote, or unnecessarily to impede its exercise, laws to regulate the exercise of the elective franchise if reasonable, uniform, and impartial, and calculated to facilitate the exercise of the right, are clearly within the legislative competency."

This section of 15 Ohio Jurisprudence, then, at page 311, quotes *Monroe* v. *Collins*, 17 Ohio St. 665, as follows:

"* * * All reasonable latitude should be allowed to the legislature in the exercise of this power of regulation, and every reasonable intendment in favor of the constitutionality of laws enacted for the purpose should be made by the

courts. Such laws are not to be held unconstitutional unless clearly so, and if they will at all bear a construction which makes them consistent with the Constitution, they are to receive that construction, and so to be upheld. The true line between laws which take away or abridge the right of suffrage and those which may lawfully be enacted to regulate its exercise is * * * that laws of the latter description must be reasonable, uniform, and impartial, and must be calculated to facilitate and secure, rather than to subvert or impede, the exercise of the right to vote.''

The first headnote of *Crow* v. *Voorhees*, 178 N. E. 169 (257 N. Y. 298), states:

''What is unreasonable or unfair to voter in election requirements is judicial question.''

The cases are legion in upholding the voters' freedom and equality of franchise and the right to have all candidacies submitted without discrimination.

''While the electors' right to fullest opportunity to vote for candidates of any political party may be restricted by dictates of common sense and consideration of convenience in the size of ballots and excessive costs where the public furnishes ballots, such restrictions will not be upheld when destructive of voters' freedom of choice.''

66 A. L. R., Page 1483; 102 A. L. R., Page 803:

''It is a uniform rule that where there is a valid act and an attempted unconstitutional amendment to it, the original act is not ineffective but remains in full force and effect even though there are express words of repeal unless it is clear that the Legislature intended such repeal.''

There are many Ohio decisions that uphold this principle of law and we do, however, feel it proper to recite one in an election matter.

In *Board of Elections* v. *State, ex rel. Schneider*, 128 Ohio St. 273, the legislature attempted to extend the existing terms of county recorder and the Supreme Court held that the statutes attempting such extension were unconstitutional.

In paragraph 3 of the syllabus, the court stated:

''The repealing clause of this enactment (115 Ohio

Laws, 191), wherein it is provided that 'existing section 2750 of the General Code be and the same is hereby repealed,' is nugatory and of no effect in law.''

At page 294, it was said:

''If it were not for the fact that the two sections when considered together do away with the election of 1934, tenable argument could be advanced favoring the constitutionality of Section 2750, General Code; but the sections are so 'inseparably connected' that both must fall, and the repealing section must fall with them. To hold otherwise would be to create a hiatus or interregnum, as you please, in the office of county recorder for the term of two years, and leave undisturbed the evil this action seeks to correct.''

In *Morton* v. *Ohio*, 105 Ohio St. 366, the court held that if the existing statute be unconstitutional, the repealing clause is ineffective unless it clearly appears that the General Assembly would have enacted the repealing clause regardless of whether the substituted amendment had been enacted. (*State, ex rel. Pogue,* v. *Groom*, 91 Ohio St. 1 and *State, ex rel. Walton*, v. *Edmonston*, 89 Ohio St. 351.)

Certainly any impairment or deprivation of the right of franchise is in violation of the Section 1 of the 14th Amendment to the Constitution of the United States, which reads:

''All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of its laws.''

This Amendment has on many occasions been held to apply to election matters. *Nixon* v. *Herndon*, 273 U. S. 536.

The enactment of rules with reference to election matters is definitely not a judicial function. If, however, there is such a hiatus in an election enactment so that an elector's

constitutional rights are infringed because the enactment group, including the citizenry, in the adopting of a charter provision, have either inadvertently or intentionally left out a provision which would otherwise safeguard all his rights, a court does have duties and obligations with respect to protecting such rights.

In this action it appears to be contended by all parties that the law, neither in the form of the city charter nor otherwise, makes any provision for the replacement of a candidate who voluntarily withdraws between the time of the primary and the general city election, which follows the primary by five weeks.

The current Cleveland charter provision specifying the procedures for election of the mayor was enacted effective October 8, 1971. Its obvious thrust is to require all persons who desire to be candidates to submit their candidacy in the primary election so that only two names will be submitted in the general city election. This supposedly is to ensure the election of the mayor by at least a majority vote instead of by the plurality that had been possible under prior provisions.

Following are the applicable charter provisions.

Chapter 3, Section 4. Nominations.

"Candidates for all offices to be voted for at any municipal election under the provisions of this charter shall be nominated at a non-partisan primary election to be held on the fifth Tuesday prior to such municipal election."

Chapter 3, Section 10. Selection of Candidates.

"The number of candidates for any office at any regular municipal election in the City at large or in each ward, as the case may be, shall be the two candidates on the primary election ballot receiving the highest number of votes at the primary election. In case there shall not be for any office more than two persons who shall have filed petitions for in this charter, then said persons shall be the candidates at the regular municipal election and the primary for the particular office shall not be held.

"The name of each person who is nominated in com-

pliance herewith shall be printed on the official ballot at the general election, and the names of no other candidates shall be printed thereon.''

Chapter 3, Section 15. General Laws to Apply; Voting Machines and Counting Devices; Corrupt Practices.

''All elections provided for by this charter, whether for the choice of officers or the submission of question to the voters, shall be conducted by the election authorities prescribed by general law; and the provisions of the general election laws of the state shall apply to all such elections except as provision is otherwise made by this charter, and except further that the council may, by ordinance, provide measures to promote and insure the purity and integrity of the ballot, and against corrupt practices in elections.''

The court has determined that the board of elections does have the discretion to accept Mr. Carney's withdrawal as a candidate and to order the removal of his name from the November ballot. The court further finds that the action of the board in such respects did not constitute a gross abuse of discretion.

The finding of the court, therefore, will be in favor of the board of elections on the request of the city of Cleveland for an order requiring the restoration of the name of Mr. Carney to the ballot.

Since the section of the Cleveland charter pertaining to election matters (Section 15) provides that the provisions of the general election laws of the state apply to all Cleveland elections, except as provision is otherwise made by the charter, and concededly the charter makes no express provision with reference to the subject matter of this lawsuit, a very intensive and detailed review of the Ohio election laws was carried out by the court.

This disclosed that in 1892 (90 Ohio Laws 119), a comprehensive election law was enacted where with reference to candidates for public office the following is contained for the first time.

''Such certificate of nomination shall also state the names and address of a committe authorized to represent

such political party, and such committee shall have power to fill vacancies which may occur in the list of nominations, unless it be otherwise specially ordered at the time of the selection of such committee and so certified."

Section 7 pertains to nominations of candidates for city or municipal office, etc., and includes the following:

"Signers of such nomination papers shall insert in them the names and addresses of such persons as they desire, to the number of five, as a committee, who may fill vacancies caused by death or withdrawal."

G. C. 5000 reads as follows with reference to candidates for municipal office:

"Signers of such nomination papers shall insert in them the names and addresses of such persons as they desire to the number of five as a committee who may fill vacancies caused by death or withdrawal. (97 v. 226 §7.)"

Amendments to the previously cited code sections resulted in deletions of that portion pertaining to withdrawals and currently specifies, in R. C. 3513.31, the procedure to be followed in the event of the death of a candidate.

The court has determined that by virtue of the failure to provide, in the Revised Code or in the city charter, for a procedure to be followed in the event of a withdrawal, R. C. 3513.31 as applicable herein under Section 15 of the Cleveland city charter does in that respect constitute an invalid deprivation of rights of electors so as to be in such respects nugatory and of no effect in law and the original act is not affected in such respect but remains in full force and effect.

10 Ohio Jurisprudence 2d 259, Constitutional Law, Section 178, state:

The general rule is that an unconstitutional law cannot operate to supersede any existing valid law. It is a uniform rule that where there is a valid act and an attempted but unconstitutional amendment to it, the original act is not affected, but remains in full force and effect."

It is therefore the determination of this court that the provision of the election laws effective prior to the deletion of provisions for procedure to be followed with reference

to withdrawal of candidacies are effective and applicable herein.

Mr. Carney's petition herein contains the names of a committee who may fill the vacancy caused by his withdrawal. The testimony by Mr. Saul Stillman, representing the board of elections, was that although changes in the ballot would necessitate the expenditure of funds and time, the board could carry out an order of this court with respect to the issues herein.

Having consideration for the problems that will necessarily confront the board of elections in view of this decision, the following procedure shall be applicable:

"Not later than 4:00 P. M. on Thursday, October 25, 1973, a majority of the said members of the said committee shall file with the Board of Elections a certificate signed and sworn to under oath by each of them, designating the person they select to fill the vacancy created by the withdrawal of Mr. Carney. Such certification must be accompanied by the written acceptance of such nomination by the person whose name is so certified."

There is no authority for the listing on the November ballot of the name of any person other than the two who received the highest number of votes in the primary except a substitute for the one whose name is certified to the board of elections in accordance with the order of this court.

Although one of the requests of the plaintiff herein is that the court enjoin or continue the election scheduled for November 6, 1973, such an order will never be entered. Having consideration for the short time remaining between the effective date of this decree and the election date, should Mr. Carney's committee fail or neglect to make the certification herein required by the time specified, the ballot shall be submitted to the electorate with the name of James M. Carney deleted therefrom and without any substitution therefor.

In *State, ex rel. Jones,* v. *O'Dwyer,* 97 Ohio St. 22, the provisions with reference to the procedure to be followed should any vacancy occur by reason of death or otherwise

are considered. However, the court found that since there was no applicable charter or statutory provisions governing the matter, the means attempted for the substitution of a candidate in that case were not proper. It is the determination of the court in this case that the charter provision, by the theoretical incorporation of the valid state election enactments, does authorize the provision specified by the court herein.

*Judgment accordingly.*